UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| GENARD DENEZ CHESTNUT,<br><br>  Plaintiff,<br><br>v.<br><br>ROBERT ATTEBERRY, MARCUS NEWSOME, DANIEL PHILBERT, JONATHAN AIKIN, STEVEN LOLA, CHRISTOPHER LANGKAU, and AUSTIN FOWLER, individually,<br><br>  Defendants. | Case No. 3:22-cv-721 |

**COMPLAINT FOR DAMAGES**

Plaintiff sues all Defendants and alleges:

**Jurisdiction And Venue**

1. Plaintiff sues pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of civil rights under the First and Eighth Amendments to the U.S. Constitution. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

2. Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367, to consider the state law claims alleged herein.

3. Venue is proper in the Middle District of Florida under 28 U.S.C. § 1391(b), this being the district where the claim arose.

4. All conditions precedent to this lawsuit, including exhaustion of administrative remedies, have occurred, been performed, or been waived.

## Parties

5. At all times material hereto, Plaintiff GENARD DENEZ CHESTNUT was an inmate in the custody and care of the Florida Department of Corrections.

6. At all times material hereto, ROBERT ATTEBERRY was a correctional sergeant at Florida State Prison. He is sued individually.

7. At all times material hereto, MARCUS NEWSOME was a correctional officer at Florida State Prison. He is sued individually.

8. At all times material hereto, DANIEL PHILBERT was a correctional lieutenant at Florida State Prison. He is sued individually.

9. At all times material hereto, JONATHAN AIKIN was a correctional sergeant at Florida State Prison. He is sued individually.

10. At all times material hereto, STEVEN LOLA was a correctional captain at Florida State Prison. He is sued individually.

11. At all times material hereto, CHRISTOPHER LANGKAU was a correctional sergeant at Florida State Prison. He is sued individually.

12. At all times material hereto, AUSTIN FOWLER was a correctional officer at Florida State Prison. He is sued individually.

13. All the above Defendants were acting under color of law.

## Common Allegations of Fact

14. The State of Florida Department of Corrections holds about 10,000 people in solitary confinement, worsening by isolation the emotional deterioration the most vulnerable prisoners including those impaired by mental illness.

15. The Department, and particularly Florida State Prison, also undermine the free speech and due process of many inmates, particularly Black inmates, who are threatened and physically harmed for complaining about officer misconduct.

16. Florida State Prison (FSP) permits officers and medical staff to deny due process and necessary care by fabricating "refusals" of participation in due process hearings and medical and mental health diagnosis and treatment.

17. The isolation of Confinement and Close Management at FSP also gives free rein to white supremacists and sadistic and predatory guards who torment prisoners through sexual humiliation, denial of food, false charges and fictitious excuses for uses of force, exposure to cold, to chemical agents, and "strip cell."

18. Inmates in confinement are frequently denied showers and recreation, phone calls, visits, education, based on fabricated charges. Mail, including legal mail and grievances are tampered with and intercepted. Searches are often opportunities to destroy property including family pictures and legal work. Incompatible inmates are often housed together and forced to fight each other for entertainment.

19. As the numbers of prisoners in Florida decline, the numbers of prisoners who die in prison, often under questionable circumstances, increase. In 2020, around 590 prisoners died – about twice as many as five years earlier.

20. During 2018, Genard Chestnut was a prisoner housed in confinement at FSP. He had a long history of filing grievances and legal actions and became the target of a group of officers who were notorious for brutality and racial animus.

21. Plaintiff Chestnut responded to the brutality and racism by writing

grievances and filing legal actions against the most brutal prison guards when he was threatened or physically abused and frequently suffered more abuse for his efforts.

22. Inmates who, like Plaintiff Chestnut, suffer from mental illness, are intended to be assisted in negotiating the difficulties of prison life, and especially in dealing with prison guards by mental health professionals who are trained to do Crisis Intervention and De-Escalation, but in practice very little is actually done.

23. Medical and mental health professionals in Florida Prisons in general and FSP in particular, generally show tremendous deference to abusive prison guards and turn a blind eye to their abuses – sometimes even join in them.

24. On April 4, 5, 9, and 10, 2018, Sgt. Robert Atteberry placed empty Styrofoam trays in Plaintiff's food slot, saying he would starve Chestnut to death, banging on Plaintiff's cell window saying it was on behalf of his brother guards.

25. Sgt. Atteberry repeatedly told Plaintiff he'd teach Chestnut a lesson for "fucking with his brothers and snitching on officers."

26. On April 10, 2018, as Sgt. Austin Merritt escorted Plaintiff, he told him, I'm gonna fuck you up or have one of my brothers do it. It could be this week, next week or a month from now, but before you leave this building."

27. On April 12, 2018, Sgt. Brett Gillespie showed up at Plaintiff's cell in C Dorm although he did not work there. Gillespie whispered through the crack of Plaintiff's door, "Nigger, I fucked up your property. I'll be back to fuck you up."

28. In April Sgt. Christopher Langkau abusively yanked and squeezed

4

Plaintiff's genitals and Ofcr. Austin Fowler poked his anus, called him a "nigger" and both whispered threats of sexual abuse while Plaintiff stood in full restraints.

29. On April 30, 2018, Ofcr. Erik McCoy blocked Plaintiff from exiting the group therapy room so that an inmate could corner Plaintiff and stab him.

30. The inmate who stabbed Plaintiff later informed him that he was paid by the officers with K-2 (synthetic cannabis) and cigarettes to kill Plaintiff. He said he did not receive any disciplinary charges as a result of the officers' protection.

31. Immediately after the stabbing, Sgt. Brett Gillespie and Sgt. Brian Scott took Plaintiff to an upstairs shower cell out of the view of the cameras and struck him with closed fists. Gillespie said, "Nigger, didn't we tell you we were going to fuck you up. We were hoping that nigger would kill you."

32. Sgt. Gillespie taunted Plaintiff to and from medical, saying, "I don't have to use my brothers to get you, fuckboy! Next time we'll get it done the right."

33. On June 6, 2018, Lt. Kyle Knight came to Plaintiff's cell and told him, "We know you've been trying to file lawsuits. We don't give a fuck about your lawsuits. We're still gonna get your ass and get away with it every time."

34. On that date, Capt. William Blitch came by Plaintiff's cell and told him, "You pissed me off in medical last year so if Sgt. Gillespie or my Lieutenant wants to get you, we're gonna get you. I told you I'd be back to see you and I'm gonna run it on you again if I keep hearing about this stupid shit you keep writing." Lt. Stephen Thompson told other inmates Plaintiff was a snitch, which could get him killed.

35. Over his time there, Florida State Prison staff continuously taunted and threatened Plaintiff, threatening serious harm on behalf of themselves and their colleagues against whom Plaintiff had written grievances.

### A. June 28, 2018, Retaliatory Use of Force

36. On June 28, 2018, Plaintiff returned to Florida State Prison after a transport off-site and was placed in a shower stall on B Wing to await housing.

37. At about 10:00 a.m., Sgt. Robert Atteberry and Officer Marcus Newsome arrived to escort Plaintiff to his assigned housing. Plaintiff was completely restrained in hand restraints with black box, belly chain and ankle restraints.

38. Sgt. Atteberry opened the shower cell door on B Wing and immediately struck Plaintiff in the face, carrying out an earlier threat to do him harm. Plaintiff dropped his weight to the floor to try to avoid further injury from Atteberry.

39. Sgt. Atteberry falsely claimed that Plaintiff had refused orders to walk out of the shower stall to be escorted to his assigned cell.

40. Sgt. Atteberry gave no commands prior to inflicting this blow and Plaintiff did not resist or fail to comply with directions prior to the blow.

41. After Plaintiff had defensively dropped to the floor, Sgt. Atteberry and Ofcr. Newsome made no effort to follow FDC use of force policy.

42. Sgt. Atteberry and Ofcr. Newsome dragged Plaintiff out of the shower and down the hall to a cell. Ofcr. Newsome threw Plaintiff into the cell.

43. Sgt. Atteberry then entered the cell, contrary to procedure, and beat Plaintiff unconscious with his radio. Sgt. Atteberry's radio was of a type favored by

the Florida Department of Corrections, a substantial, metal brick-like device with a strong clad antenna solidly affixed to one end that can be used as a "sap" or "club" to cause significant injuries, frequently head injuries, to prisoners.

44. In this age of small, lightweight electronics, the heavy Walkie Talkies used by Florida Department of Corrections officers have a definite function.

45. Ofcr. Newsome assisted Sgt. Atteberry in the use of force and did not make any effort to intervene to protect Plaintiff though he had the ability to do so.

46. Plaintiff appealed to FDC investigators to preserve video from fixed wing cameras in B Wing, Second Floor and statements of inmate witnesses.

47. Plaintiff suffered edemas and other serious injuries, including gashes, to his head which were incompletely documented by medical staff. Plaintiff suffered vertigo for weeks and may have suffered a concussion.

48. Plaintiff grieved the gratuitous use of force and the failure to provide medical care for a possible concussion and requested the preservation of relevant video and the grievance was approved and referred for investigation.

49. Plaintiff also exhausted such administrative remedies as were made available for retaliation related to the incidents complained of above, including interference with mail, grievances, and property, and false charges.

**B. July 27, 2018, Retaliatory Use of Force**

50. On July 27, 2018, at approximately 11:30 a.m., force was ordered by Lt. Daniel Philbert, in which Plaintiff was falsely charged with disruptive acts and subjected to deployment of chemical agents into his cell, specifically two heavy MK9

7

applications of Sabre Red high-potency OC Spray.

51. Prior to the use of force, Mental Health Professional M.K. Smith purported to employ crisis intervention (CIT) but did not actually do so.

52. Sgt. Jonathan Aikin deployed over 12 ounces of high-potency Sabre Red OC Spray which were the entire contents of a coffee thermos-size canister of chemical agents using the "fogger" setting permeating all the air in the cell.

53. The chemical agents burn the skin and cause extreme pain to the eyes, nose, mouth and every body orifice. It swells the airways and makes it hard to breathe and causes extreme anxiety and unreasoning fear of imminent death.

54. Capt. Steven Lola, Sgt. Christopher Langkau, and Officers Austin Fowler, Jonathan Collison and Gary Dean were present and aware the force was excessive but did not attempt to intervene though they were able to do so.

55. Sgt. Langkau had previously sexually abused Plaintiff and took advantage of the opportunity that day to jerk Plaintiff's boxers up between his buttocks. Fowler, who had also sexually abused Plaintiff stood by and watched.

56. Plaintiff was falsely charged with "disorderly conduct" and lost privileges, including phone, visitation, dayroom, and education based on the false charges used as cover for the unnecessary and excessive uses of force.

57. Plaintiff exhausted such administrative remedies as were made available to him and his appeal was denied by the Secretary on August 7, 2018.

58. In December of 2018, Plaintiff was finally transferred to another Florida Prison – Suwannee Correctional Institution. Before Plaintiff left, Capt. Steven Lola

said to him, "I'm going to call my friends at Suwannee and let them know to finish taking care of you. You better keep your mouth shut."

## Causes of Action

I. **Violation of 42 U.S.C. § 1983 for First Amendment Retaliation**

59.  Plaintiff re-alleges the Common Allegations of Fact.

60.  Plaintiff is entitled to relief against Robert Atteberry for acts designed to chill the exercise of speech and redress (such as grievances) and acts as retaliation for having previously exercised protected speech and redress such that a person of ordinary firmness would normally refrain from fully expressing such speech.

61.  Plaintiff was physically abused and threatened for writing grievances and for prosecuting civil rights lawsuits against abusive corrections officials. defendants taunted him and explicitly made clear to him the threats and abuses were retaliation for grievances and complaints he had made in the past.

62.  As a direct and proximate result of these defendants' unlawful acts, Plaintiff has suffered various emotional and physical injuries, distress and pain, as described more fully in the common allegations of fact above.

63.  Plaintiff has been required to engage the services of the undersigned counsel. As such, Plaintiff is entitled to an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988.

WHEREFORE, Plaintiff demands judgment as noted below.

II. **Violation of 42 U.S.C. § 1983 for Excessive Force**

64.  Plaintiff re-alleges the Common Allegations of Fact.

9

65. Plaintiff is entitled to relief against Defendants Robert Atteberry and Jonathan Aikin for excessive force in violation of the Eighth Amendment as more fully described in the common allegations of fact, sections A and B, above.

66. As a direct and proximate result of these defendants' unlawful acts, Plaintiff has suffered various emotional and physical injuries, distress and pain, as described more fully in the common allegations, sections A and B above.

67. Plaintiff has been required to engage the services of the undersigned counsel. As such, Plaintiff is entitled to an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988.

WHEREFORE, Plaintiff demands judgment as noted below..

### III. Violation of 42 U.S.C. § 1983 for Supervisor Liability

68. Plaintiff re-alleges the Common Allegations of Fact:

69. Plaintiff is entitled to relief against Defendant Philbert and Lola for deliberate indifference toward his subordinates' acts of excessive force without penological purpose and acts intended to chill and retaliate for protected speech and efforts at redress such that a person of ordinary firmness would refrain from fully exercising such speech, as further specified by Section B above.

70. As a direct and proximate result of Defendant's unlawful acts, Plaintiff has suffered various emotional and physical injuries, anxiety, distress and physical pain, as described more fully in Section B above.

71. Plaintiff has been required to engage the services of the undersigned counsel. As such, Plaintiff is entitled to an award of reasonable attorney's fees and

costs pursuant to 42 U.S.C. §§ 1983 and 1988.

WHEREFORE, Plaintiff demands judgment as noted below.

**IV.     Violation of 42 U.S.C. § 1983 for Failure to Intervene**

72.     Plaintiff re-alleges the Common Allegations of Fact:

73.     Plaintiff is entitled to relief against Defendants Newsome, Lola, Langkau, and Fowler, for failing to intervene to prevent abuse, though able.

74.     As a direct and proximate result of these defendants' unlawful acts, Plaintiff has suffered various emotional and physical injuries, distress and pain, as described more fully in Section A and B above.

75.     Plaintiff has been required to engage the services of the undersigned counsel. As such, Plaintiff is entitled to an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988.

WHEREFORE, Plaintiff demands judgment as noted below.

**V.     Violation of 42 U.S.C. § 1983 for Failure to Protect**

76.     Plaintiff re-alleges the Common Allegations of Fact:

77.     Plaintiff is entitled to relief against Defendant Newsome, Lola, Langkau, and Fowler for failure to protect Plaintiff from harm by others by excessive force or acts designed to chill the exercise of speech and redress and as retaliation for having previously exercised protected speech and redress.

78.     As a direct and proximate result of these defendants' unlawful acts, Plaintiff has suffered various emotional and physical injuries, distress and pain, as described more fully in Section A and B above.

79. Plaintiff has been required to engage the services of the undersigned counsel. As such, Plaintiff is entitled to an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988.

WHEREFORE, Plaintiff demands judgment as noted below.

**VI. Conspiracy to Violate Civil Rights under 42 U.S.C. § 1983**

80. Plaintiff re-alleges the Common Allegations of Fact:

81. Plaintiff is entitled to relief against Defendants Atteberry, Newsome, Philbert, Aikin, Lola, Langkau, and Fowler, for conspiring to violate the rights of the Plaintiff by acts designed to achieve a personal goal and carry out a criminal purpose.

82. As a direct and proximate result of these defendants' unlawful acts, Plaintiff has suffered various emotional and physical injuries, distress and pain, as described more fully in Sections A and B above.

83. Plaintiff has been required to engage the services of the undersigned counsel. As such, Plaintiff is entitled to an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988.

**VII. Abuse or Neglect of a Vulnerable Adult § 415.1111, Fla. Stat. (Atteberry, Newsome, Philbert, Aikin, Lola, Langkau, and Fowler)**

84. Plaintiff re-alleges the Common Allegations of Fact.

85. Plaintiff is entitled to relief against Defendants Atteberry, Newsome, Philbert, Aikin, Lola, Langkau, and Fowler, under the Adult Protective Services Act, § 415.1111, Florida Statutes as described more fully in sections A and B above.

86. Plaintiff met the definition of a "vulnerable adult" in that he was an

adult whose ability to perform the normal activities of daily living or to provide for his own care was impaired due to a mental health infirmity.

87. The above Defendants assumed the responsibility for a caregiver relationship, involving the regular and frequent care of Plaintiff.

88. Defendants had a duty to avoid acts or omissions that caused significant impairment to Plaintiff's mental and physical health.

89. Defendants had a duty to provide care, supervision and services necessary to Plaintiff, including food, shelter, needed medical care, and hygiene.

90. Defendants breached that duty of care by abusive and neglectful acts that could reasonably be expected to cause serious physical and mental injury.

91. Defendants breached their duties to Plaintiff by:

   a. Acting in a way that caused or was likely to cause significant impairment to Plaintiff's physical, mental, and emotional health;

   b. As to supervisors, failing to properly supervise and discipline employees involved in the custody and care of vulnerable inmates;

   c. Failing to follow normal and accepted humane corrections practices and procedures relating to the safe care of vulnerable inmates;

   d. Failing to provide care, supervision, and services necessary to maintain the physical and mental health of Plaintiff, including necessary treatment, supervision, monitoring and medical services, that a prudent person would consider essential for the well-being of a vulnerable adult;

92. As a direct and proximate result of Defendants' breach of duty to the Plaintiff, Plaintiff suffered severe physical and mental injuries.

93. Defendants' acts and omissions as stated above constitute "abuse" as

that term is defined in § 415.102(1), Florida Statutes, as well as "neglect" as that term is defined in § 415.102(15), Florida Statutes.

94. Pursuant to § 415.1111, Florida Statutes, Plaintiff is entitled to actual damages from Defendant, as well as attorneys' fees and costs.

95. Plaintiffs will seek punitive damages provided for in the statute.

WHEREFORE, Plaintiff prays for relief as set forth below.

### Prayer for Relief

WHEREFORE, Plaintiff respectfully requests of the Court:

A. Compensatory damages in an amount to be determined, including damages for physical injury and mental pain and suffering;

B. Punitive damages against the individual defendants for their malicious and unconscionable actions depriving Plaintiff of his constitutional rights;

C. Reasonable attorney's fees and costs under 42 U.S.C. § 1988;

D. Trial by jury on all counts so triable; and

E. Any further relief this Court deems just and proper.

Respectfully submitted on 6/28/22,   s/ James V. Cook
JAMES V. COOK, ESQ.
Florida Bar Number 0966843
Law Office of James Cook
314 West Jefferson Street
Tallahassee, Florida 32301
(850) 222-8080; 561-0836 fax
cookjv@gmail.com

ATTORNEY FOR PLAINTIFF